Louis John Maffei, III, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Submitted on briefs June 6, 1980, to Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Francis P. Burns,* for appellant.

*Harold H. Cramer,* Assistant Attorney General, with him *Ward T. Williams,* Chief Counsel, Transportation, and *Harvey Bartle, III,* Acting Attorney General, for appellee.

OPINION BY JUDGE CRAIG, July 22, 1980:

Louis Maffei seeks review of an order of the Court of Common Pleas of Luzerne County dismissing his appeal from the Secretary of Transportation's suspension of his driver's license under Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547, on the ground that Maffei refused to submit to a blood test.

Maffei was one of the drivers involved in a three-car accident. Officer Goodwin testified that, at the scene of the accident, he observed Maffei behaving in a loud and boisterous manner, in what seemed to the officer to be an intoxicated condition. At the hospital, where the injured Maffei was being treated in the emergency room, the officer placed him under arrest for driving under the influence of alcohol.

At the officer's request, Maffei agreed to submit to a blood test.

According to the officer's testimony, thereafter the technician who was to administer the blood test read to Maffei a hospital form which included a statement providing in substance that soap and water, not alcohol, would be used to cleanse the area from which the blood sample would be drawn.

However, on direct examination Maffei's testimony was that:

> The lab technician came in and before she did the test she wanted me to sign a waiver that the hospital is not responsible—this is as far as I understand it, you know, if you get hepatitis or some sort of disease from not cleansing the needle or your arm that they're not responsible for it if you die a day or two from now from the test, nobody's responsible for it. So I plainly told her to kiss my ass.

Not only is there no evidence contradicting Maffei's testimony that the form was a release from liability, but the officer also agreed that the form was a "waiver

of rights" or a "waiver of negligence" or a "consent to hold the hospital harmless" or a "release." Although neither party has seen fit to include the form in the record, the testimony on both sides has confirmed its nature as a release.

Moreover, the officer acknowledged that it was "correct" that the lab technician "wanted him [Maffei] to sign the release before anything was done" — before the blood test was given.

The trial court determined that Maffei had refused the blood test and that all of the requirements for sustaining a license suspension had been met. *See Department of Transportation, Bureau of Traffic Safety v. Drugotch*, 9 Pa. Commonwealth Ct. 460, 308 A.2d 183 (1973). The trial court's decision in a license suspension is not to be disturbed unless its findings are not supported by competent evidence or it made erroneous conclusions of law or its decision exhibits a manifest abuse of discretion. *McMahon v. Commonwealth of Pennsylvania*, 39 Pa. Commonwealth Ct. 260, 395 A.2d 318 (1978).

Here the Commonwealth's own evidence has established that the blood test was tied to execution of the liability release. Hence, even if Maffei is considered to have withdrawn his assent to the blood test upon being presented with the necessity of executing the release as a condition precedent, the question of law is whether the state (or hospital acting for it) may interpose execution of a liability release as part of the blood test procedure for which the motorist's assent is required.

Although the law is clear that anything substantially short of an unqualified assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so, *McMahon, supra*, 39 Pa. Commonwealth Ct. at 265, 395 A.2d at 320, nothing in the Vehicle Code requires a driver, as part of his consent

to a blood test, to execute a document limiting or waiving the tester's liability.

The Vehicle Code specifically provides the hospital, physician and technician with stated immunity from civil liability for "withdrawing of blood and reporting of test results", 75 Pa. C.S. §1547(j). However, in this case, we are unable to analyze the scope of that statutory immunity.

Nevertheless, the motorist's duty to assent to a blood test cannot lawfully be burdened by adding (or upholding) the requirement that he also sign a form devised by a hospital. The statute provides that "[a]ny person who operates a motor vehicle ... shall be deemed to have given consent to a chemical test of breath or blood." Further, the six-month suspension provision applies when "any person placed under arrest for driving under the influence of alcohol is requested to submit to a chemical test and refuses to do so." 75 Pa. C.S. §1547(a), (b)(1)(i). A motorist is thus deemed to consent to a blood test, not a blood test accompanied by a signed waiver of liability. License suspension is a sanction for refusal to submit to a chemical test, not refusal of a test linked with execution of a release.

Therefore, we conclude that the trial court erred as a matter of law in viewing the statutory mandate as being broad enough to cover the two-pronged requirement presented to the motorist here. We must reverse the order dismissing the appeal.

### Order

And Now, this 22nd day of July, 1980, the order of the Court of Common Pleas of Luzerne County, dated November 30, 1978 at No. 9108 of 1978, is reversed and the appeal of Louis John Maffei, III, from driver's license suspension is sustained.