**Justin A. WILT, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 27, 1998.

Decided April 23, 1998.

---

Jerry A. Philpott, Duncannon, for appellant.

Timothy P. Wile, Asst. Counsel In-Charge, and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Justin A. Wilt (Licensee) appeals an order of the Court of Common Pleas of Dauphin County (trial court) dismissing his appeal and reinstating the one-year suspension of his driving privileges imposed by the Commonwealth of Pennsylvania, Department of

---

Transportation, Bureau of Driver Licensing (PennDot).

On October 14, 1996, Licensee was involved in an automobile accident while driving his car. The accident was investigated by State Trooper David P. Thomas (Trooper Thomas) who, suspecting Licensee of driving while under the influence of alcohol, placed him under arrest and drove him to the Polyclinic Hospital to have him submit to a chemical test of blood. After Licensee arrived at the hospital, the hospital personnel gave him a consent form to read and sign, agreeing that they could perform the test. The form, if signed, also indicated that he would be held financially responsible for the chemical blood test. Licensee asked Trooper Thomas if he knew the cost of the blood test, but Trooper Thomas did not. He also asked hospital personnel how much the blood test would cost but he did not receive an answer. He then refused to submit to the test because he did not have health insurance and did not know if he would be able to afford the cost of the test. Although Trooper Thomas read Licensee the warning indicating that his driving privileges would be suspended if he refused the test, Licensee still refused to submit to the blood test. Based on his refusal to submit to chemical testing, PennDot sent Licensee an official notice dated November 8, 1996, informing him that his driving privileges were being suspended for one year effective December 13, 1996, for violating Section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1).[1] Licensee appealed that suspension to the trial court.

■ At the hearing before the trial court, Trooper Thomas testified that he recalled Licensee saying that he did not have health insurance, and to his knowledge, no one ever told Licensee the cost of the blood test.

Licensee testified that he did not have health insurance and had limited funds for emergencies so he had asked how much the entire process would cost. When he did not get an answer to that question, he did not sign the consent form. When asked why it was important for him to know the cost of the test, he responded, "Well, for reasons being that I just—I'm not a very wealthy man." (Reproduced Record at 13a.) Licensee also stated that had he found out the test was affordable, he would have submitted to the test. Regarding his refusal to take the test, Licensee stated, "I think the closest thing to a denial that I gave was that I said I would not sign the form unless I found out the cost of the procedure." (Reproduced Record at 14a.) Nonetheless, Licensee admitted that he never agreed to take the test.

The trial court determined that because Section 1547 of the Vehicle Code requires a motorist to consent to having one of three tests performed—breath, blood or urine—by virtue of being a licensed driver, Licensee was ultimately responsible for paying the costs of the blood test regardless of the amount. Additionally, the cost of the blood test was part of the cost of operating a motor vehicle. Because he refused to submit to the test, his failure to do so constituted a refusal and required the suspension of his driving privilege. The trial court then dismissed his appeal and reinstated his one-year suspension.[2] Licensee filed this appeal arguing that he did not make a "knowing" refusal because he did not know the cost of the blood test and did not have health insurance.[3]

■ In order for PennDot to satisfy its initial burden of proof and make out a prima facie case in an appeal from the suspension of driving privileges for failure to submit to chemical testing, PennDot must establish the

---

1. Section 1547(b)(1) of the Vehicle Code provides:

   If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

2. The record is not clear as to when Licensee's driving privileges were reinstated after the accident and license suspension occurred.

3. Our scope of review of the trial court's decision is limited to determining whether findings of fact are supported by competent evidence of record and whether the trial court committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Boucher,* 547 Pa. 440, 691 A.2d 450 (1997).

following: that the licensee was arrested for a violation of 75 Pa.C.S. § 3731(a) for driving while under the influence of alcohol;[4] was requested to submit to chemical testing; refused to do so, and was warned of the consequences of refusing that test. *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996). Regarding the third element, generally, any response from a licensee that is short of an unqualified, unequivocal assent to take the test requested constitutes a refusal and requires the one-year suspension of the motorist's operating privileges. *McMahon v. Commonwealth of Pennsylvania,* 39 Pa.Cmwlth. 260, 395 A.2d 318 (1978).

In *Maffei v. Department of Transportation,* 53 Pa.Cmwlth. 182, 416 A.2d 1167 (1980), a similar situation arose where a motorist refused to sign a hospital consent form and his refusal was deemed a refusal to submit to the chemical test. In finding that the motorist's refusal to sign the consent form was not a refusal to submit to the test, we stated the following:

Nevertheless, the motorist's duty to assent to a blood test cannot lawfully be burdened by adding (or upholding) the requirement that he also sign a form devised by a hospital. The statute provides that "[a]ny person who operates a motor vehicle ... shall be deemed to have given consent to a chemical test of breath or blood." ... A motorist is thus deemed to consent to a blood test, not a waiver of liability. License suspension is a sanction for refusal to submit to a chemical test, not refusal of a test linked with execution of a release.

*Id.* 416 A.2d at 1169. This rationale extends to those motorists who refuse to sign a hospital consent form or any form that contains language requiring them to be financially responsible because the taking of the test and the signing of the form are inextricably intertwined. Such a demand is not found within the language of Section 1547 of the Vehicle Code and has no place in the chemical testing process.

More recently, in *Department of Transportation v. Renwick,* 543 Pa. 122, 669 A.2d 934 (1996), our Supreme Court held that a licensee's refusal to sign a form of any nature in order to consent to chemical testing was beyond the parameters of Section 1547 of the Vehicle Code which does not require a licensee to complete any pre-test procedure, but went on to state:

This, however, does not end our analysis. We continue to adhere to the established law providing that anything less than an unqualified, unequivocal assent constitutes a refusal under § 1547. (citations omitted.) Although Appellee's refusal to sign the consent form does not, in and of itself, constitute refusal to take the chemical test, the facts dictate that Appellee's overall conduct demonstrated a refusal.

*Id.* at 131, 669 A.2d at 939.

Taking into consideration the totality of the circumstance, Licensee's overall conduct indicates that he would have taken the test absent the unwarranted condition that he was required to pay for the test without being told the cost. Up until the time he was given the form, he never indicated any opposition to submitting to testing and his opposition arose only when he was not told the cost. Because Licensee's conduct as a whole did not constitute a refusal to submit to the chemical test, the trial court erred by dismissing his appeal and reinstating the one-year suspension of his driving privilege.[5] Accordingly, the decision of the trial court is reversed.

### ORDER

AND NOW, this 23rd day of April, 1998, the order of the Court of Common Pleas of Dauphin County dated August 14, 1997, dismissing the appeal of Justin A. Wilt and reinstating the one-year suspension of his driving privileges is reversed.

---

4. 75 Pa.C.S. § 3731. That section provides that a person shall not drive any vehicle while under the influence of alcohol to a degree that renders the person incapable of safe driving.

5. We do not reach whether a licensee can be charged for chemical testing, only that it cannot be made a condition of taking the test.