# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amanda Lukach,                :
               Appellant      :
                          :    No. 1456 C.D. 2017
           v.              :
                          :    Submitted: March 2, 2018
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: June 4, 2018


Amanda Lukach (Licensee) appeals from the September 12, 2017 order of the Court of Common Pleas of Berks County (trial court) denying her statutory appeal from a one-year suspension of her driving privilege imposed by the Department of Transportation (DOT) pursuant to section 1547(b)(1)(i) of the Vehicle Code.[1]  The

---

[1] Section 1547(b)(1)(i) provides that if any person placed under arrest for driving while under the influence is requested to submit to a chemical test and refuses to do so, DOT shall suspend the person's operating privilege for one year.  75 Pa.C.S. §1547(b)(1)(i).  In order to sustain a suspension of operating privilege under this section, DOT must establish that the licensee (1) was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating a motor vehicle while under the influence of alcohol, (2) was requested to submit to a chemical test, (3) refused to submit, and (4) was warned that refusal would result in a license suspension. *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa. Cmwlth. 2006).

sole issue on appeal is whether the trial court erred in determining that Licensee refused to submit to a blood draw.

On October 16, 2016, Officer Jeffrey Futchko of the Western Berks Regional Police Department witnessed Licensee commit a violation of the Vehicle Code[2] and instituted a traffic stop. Officer Futchko observed Licensee display the classic signs of alcohol ingestion; Licensee admitted that she had consumed alcohol; and she failed a breath test and field sobriety tests. Officer Futchko then placed Licensee under arrest for driving under the influence (DUI) and transported her to the DUI Center. There, Officer Futchko read the implied consent warnings to Licensee from the DL-26 Form,[3] requesting that she submit to a blood draw to measure her blood alcohol content. After some wavering on the part of Licensee, and repeated insistence that she talk to her sister, an attorney, before taking the blood draw, Officer Futchko deemed Licensee's conduct to be a refusal to submit to chemical testing. (Reproduced Record (R.R.) at 1a-8a.)

DOT received notice that Licensee refused to submit to chemical testing, and thereafter mailed her a notice on October 31, 2016, advising her that her driving privileges were being suspended for a period of 12 months, effective December 5, 2016, pursuant to section 1547(b)(1)(i) of the Vehicle Code. Licensee filed a timely

---

[2] 75 Pa.C.S. §§101-9805.

[3] Form DL-26 contains the chemical testing warnings required by section 1547 of the Vehicle Code, 75 Pa.C.S. §1547, pursuant to our Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989). These warnings, also known as the implied consent warnings or *O'Connell* warnings, inform a motorist that she is under arrest; that she is being requested to submit to a chemical test; that she will lose her operating privileges if the request is refused; and that there is no right to remain silent or speak to an attorney or anyone else prior to taking the test.

2

appeal, and on September 12, 2017, the trial court held a *de novo* hearing. (Trial court op. at 1; Ex. C-1.)

At the hearing, Officer Futchko testified that, at the DUI Center, he read Licensee the warnings on the DL-26 Form at 1:38 a.m., informing her, among other things:

> You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(R.R. at 6a-7a; Ex. C-1.)

Officer Futchko testified that Licensee initially agreed to take the blood test. However, when Licensee was escorted to the processing area, she affirmatively stated "that she had to make a phone call to her sister first before taking the test." (R.R. at 7a.) Officer Futchko then asked Licensee "two or three more times if she was going to take the blood test and each time [Licensee] indicated she would like to talk to her sister before the blood was drawn and that her sister is her attorney." *Id.* At 2:04 a.m., after providing Licensee with "two or three minutes" to "reconsider taking the blood test," Officer Futchko deemed her conduct to constitute a refusal to submit to the blood draw. (Trial court op. at 4; R.R. at 7a.)

Based on this testimony, the trial court found that Licensee engaged in a "tacit refusal" by asking to "speak to her sister, who she explained was her lawyer, four times." (Trial court op. at 5.) The trial court additionally found that Licensee "was not confused about the language of the warnings," "never indicated that she had any questions about the warnings," and "was told several times that she had no right to speak to her sister first." (*Id.*) Citing *Quigley v. Department of Transportation, Bureau*

3

*of Driver Licensing*, 965 A.2d 349 (Pa. Cmwlth. 2009), the trial court denied Licensee's appeal.

Before this Court,[4] Licensee argues that the trial court erred in determining that she refused to take a blood draw. Licensee asserts that she never informed Officer Futchko that she was unwilling to or would not take the test; Officer Futchko did not wait a reasonable amount of time before deeming her actions a refusal; and she was not asked to sign the DL-26 Form indicating that she refused to submit to the blood draw. We find no merit in these contentions.

Whether a motorist refused to submit to a chemical test is a question of law that depends on the factual determinations of the trial court. *Hudson v. Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa. Cmwlth. 2003).

Once a police officer provides the implied consent warnings to a licensee, the officer has done all that is legally required to ensure the licensee is fully advised of the consequences of her failure to submit to chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 545 (Pa. 1996). A police officer has no duty to make certain that a licensee understands the implied consent warnings. *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 35 (Pa. Cmwlth. 2005).

In proving that a licensee refused to submit to chemical testing, DOT has the burden of showing that the licensee was offered a meaningful opportunity to submit to chemical testing. *Petrocsko v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 714, 716 (Pa. Cmwlth. 2000). If a licensee is provided with such

---

[4] Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Pasecki v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1067, 1070 (Pa. Cmwlth. 2010).

4

an opportunity, "anything less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to submit to testing. *Department of Transportation v. Renwick*, 669 A.2d 934, 938 (Pa. 1996); *Lanthier v. Department of Transportation, Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa. Cmwlth. 2011). In situations where a licensee initially agrees to submit to testing, the licensee's subsequent conduct can negate the assent and amount to a refusal; such refusal need not be expressly conveyed in words and can be gleaned from the licensee's silence or inaction. *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10, 18-19 (Pa. Cmwlth. 2017); *Department of Transportation, Bureau of Traffic Safety v. Krishak*, 496 A.2d 1356, 1360 (Pa. Cmwlth. 1985). Particularly, a refusal may be found where the licensee's "overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Nardone v. Department of Transportation, Bureau of Driver Licensing*, 130 A.3d 738, 749 (Pa. 2015).

In *Quigley*, the police officer read the licensee the chemical test warnings on the DL-26 Form at the police station and asked the licensee to submit to a chemical test. The licensee responded that she did not want to take the test, stating that she desired to speak with her husband. The police officer concluded that the licensee refused to take the test. In affirming the license suspension, this Court stated:

> [I]n this case, Quigley was not confused about the language of the warnings. She never indicated that she had any questions about it, or that she interpreted the language of the DL-26 Form to mean that her operating privilege[] would only be suspended if she had previous refusals or convictions for DUI. In addition, the only reason she gives for not wanting to submit to the breathalyzer is that she wanted to speak with her husband first, which she had been told she had no right to do.

*Quigley*, 965 A.2d at 354.

5

In DUI cases involving consent for a blood draw, we have long held that when a licensee is specifically advised that there is no right to speak to an attorney or any other person, and the licensee requests that she first speak with such individuals prior to taking the test, this is compelling evidence that the licensee has refused to submit to the test. *See, e.g.*, *Hirsch v. Department of Transportation, Bureau of Driver Licensing*, 702 A.2d 375, 377 (Pa. Cmwlth. 1997) ("Hirsch continued, in spite of that warning, to assert that he wanted to speak with his attorney before submitting to the blood test, the police officer performed his duty under *O'Connell* when he read Hirsch the warnings from the DL-26 form . . . . Therefore, because the police officer gave Hirsch the proper *O'Connell* warnings from the DL-26 form, Hirsch's failure to submit to chemical testing constitutes a refusal.").[5] The underlying rationale for the rule is that a licensee has no constitutional or statutory right to speak to individuals before deciding to take a chemical test, and attempts by a licensee to do so necessarily delay the administration of the test and indicate that the licensee is unwilling to assent to the test. *Department of Transportation, Bureau of Traffic Safety v. Cannon*, 286 A.2d 24, 26 (Pa. Cmwlth. 1972).

---

[5] *See also In re Appeal of Kilcullen*, 520 A. 2d 947, 948-49 (Pa. Cmwlth. 1987) ("Just as Appellant has no right to confer with an attorney prior to making a decision whether or not to assent to an officer's request to submit to a chemical test, he has no right to consult with a parent or other relative prior to making such a decision. Appellant's admitted failure to make a decision in response to the officers' requests constitutes a refusal."); *Department of Transportation, Bureau of Traffic Safety v. Doherty*, 490 A.2d 481, 482 (Pa. Cmwlth. 1985) (collecting and discussing cases) ("Invariably the licensee wanted to consult his lawyer or have one present *before* submitting to the breathalyzer test. In each case, this conditioned response was construed to be a refusal which justified the suspension of a driver's license.") (emphasis in original); *Department of Transportation, Bureau of Traffic Safety v. Cannon*, 286 A.2d 24, 26 (Pa. Cmwlth. 1972) ("[T]he licensee has no right . . . to be able to call an attorney before deciding whether or not to take the test . . . . [I]t follows that appellee had no right to condition his taking the test upon being able to make a telephone call . . . . [T]he request for consultation with counsel necessarily involved a delay in administration of the test . . . . The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request.").

Moreover, in these DUI cases involving consent for a blood draw, a police officer is not required to spend time either cajoling a licensee or waiting for her to change her mind. *Grogg v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 715, 719 (Pa. Cmwlth. 2013); *Department of Transportation, Bureau of Traffic Safety v. Ferrara*, 493 A.2d 154, 157 (Pa. Cmwlth. 1985). In determining whether a licensee had a sufficient opportunity to submit to testing, "the number of passing minutes" between the time the officer reads the DL-26 Form and the deemed refusal "is irrelevant, so long as a licensee's conduct evidences a refusal." *Delprete v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 961 C.D. 2012, filed January 22, 2013) (unreported), slip op. at 8 n.4;[6] *see also McCloskey v. Department of Transportation, Bureau of Driver Licensing*, 722 A.2d 1159, 1163 (Pa. Cmwlth. 1999). "[T]his Court has never suggested that [a licensee] must be provided with a specific time span in which to consent to testing," and we generally defer to a trial court's finding that a licensee's "conduct demonstrated a refusal" or "that her failure to submit to testing was an attempt to delay the testing process." *Grogg*, 79 A.3d at 720.

Here, as found by the trial court, Officer Futchko read the DL-26 Form to Licensee, specifically informing her that she had no right to speak to her sister in either a personal or representative capacity, and reiterated this warning. Although Licensee agreed to take the blood draw at 1:38 a.m., she changed direction when she was escorted to the processing center, whereupon she embarked in a course of conduct that displayed her unwillingness to assent to the blood draw. More specifically, in responding to Officer Futchko's four requests that she take the blood draw, Licensee

---

[6] Pursuant to Commonwealth Court Internal Operating Procedure section 414(a), an unreported Commonwealth Court panel decision issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent. 210 Pa. Code §69.414(a).

insisted that she first speak with her sister/attorney four times, notwithstanding the above-mentioned directives that she had no right to do so.

Contrary to Licensee's argument, a police officer is under no obligation to provide a licensee with the opportunity to sign the "refusal" line on the DL-26 Form. *Keener v. Commonwealth* (Pa. Cmwlth., Nos. 1003 and 1004 C.D. 2016, filed May 25, 2017) (unreported), slip op. at 11. This is because "DOT does not need to prove a licensee's unequivocal refusal," *id.*; rather, "anything less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal. *Renwick*, 669 A.2d at 938. In this case, Licensee's repeated invocations to speak to her sister/attorney before submitting to the blood draw meets the legal standard for a refusal. Notably, the trial court found that Licensee had a meaningful opportunity to agree and succumb to the blood draw and was not confused by the warnings. Therefore, we conclude that the trial court did not err in determining that Licensee refused to submit to the blood draw.

Accordingly, we affirm the trial court's order denying Licensee's statutory appeal from a one-year suspension of her driving privileges under section 1547(b)(1)(i) of the Vehicle Code.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amanda Lukach,                                   :
                Appellant               :
                        :   No.  1456 C.D. 2017
            v.                         :
                        :
Commonwealth of Pennsylvania,    :
Department of Transportation,         :
Bureau of Driver Licensing            :

## *<u>ORDER</u>*

AND NOW, this 4th day of June, 2018, the September 12, 2017 order of the Court of Common Pleas of Berks County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge